442 P.2d 929

In the Matter of the Suspension and Liquidation of UTAH SAVINGS AND LOAN ASSOCIATION, a Utah corporation, W. Smoot Brimhall, Commissioner of Financial Institutions of the State of Utah, Appellant.

No. 11172.

Supreme Court of Utah.

June 25, 1968.

David K. Watkiss and Zar E. Hayes, of Pugsley, Hayes, Rampton & Watkiss, Salt Lake City, for appellant.

Phillip V. Christensen, Provo, William G. Fowler, Salt Lake City, for respondent.

CROCKETT, Chief Justice:

In this proceeding we are asked to rule on this question: Were deposits with Utah Savings & Loan Association at Provo, Utah, made after July 7, 1966, to be treated as separate trust funds for the benefit of the depositors thereof, as ordered by the State Bank Commissioner, or should they be treated as commingled funds and thus as ordinary assets as urged by contestants?

About the first of July, 1966, the Bank Commissioner had become aware of facts which gave rise to concern about the soundness of the financial condition of Utah Savings. There was occurring an unusually heavy withdrawal of deposits and on July 6, 1966, its Board of Directors placed it on a limited withdrawal program. The next day the Bank Commissioner advised the officers of Utah Savings that he had serious doubt that its depositors would be able to get a full return; that there was danger of inequity favoring those who were withdrawing deposits over those who were leaving their money in, and over those who were making current deposits; and directed that any deposits after that date should be kept in a separate trust fund, and the following day, July 8th, confirmed this by the following letter:

Gentlemen:

By authority vested in me, by Section 7–7–43, Utah Code Annotated, 1953, you are hereby ordered to hold all funds received as dues or other payments on investment shares received after the opening of business July 7, 1966. These funds are to be held separately from all other funds of your association and are to be deposited or invested under the supervision of this department. You may invest these funds in any investment outlet authorized by Section 7–5–11, Utah Code Annotated, 1953 as amended. This

confirms my verbal order given in your office on July 7, 1966.

Very truly yours.

Sec. 7-7-43, U.C.A.1953, referred to in the letter, provides:

Whenever, upon investigation and determination by the bank commissioner, any building and loan company under his supervision is, in his opinion, in such condition that persons investing money therein will not receive the full return of their investment with agreed earnings, or so that nonwithdrawing shareholders are in danger of not receiving a proportionate interest in the assets equally with active withdrawing shareholders, the bank commissioner may, pending reduction of liabilities or reorganization of such building and loan company require that withdrawal payments cease and *he may cause all new money received as dues or other payments on investment shares by such company to be separately held or deposited or invested in trust under his supervision and preserved for the protection of persons making such new investments, * * *.*

This statute underwrites with unmistakable clarity the order made by the Banking Commissioner; and his opinion that Utah Savings was in financial difficulty is not challenged. The problem in this case arises from the argument of those contesting the order that the deposits made thereafter cannot be treated as trust funds for the later depositors because of another statute, Sec. 7-2-15, U.C.A.1953, which provides in pertinent part:

*No preferences or priorities shall be given to any claim except such as are ordinarily incurred in supervising and liquidating the affairs of such institution and except such as are otherwise provided by law.* Claims based on checks, drafts, * * * [etc.] * * * received by it for collection and remittance or payment and not for deposit shall upon the liquidation of such issuing bank or trust company be entitled to payment in full in preference to and before any payment shall be made upon the claims of depositors and other general creditors of such bank or trust company.

■ If the latter statute could be looked at separately as the whole law on the subject, the contestants' position might have merit. But that is not the way statutes are to be interpreted and applied. It is true here, as it is in so many areas of the law, that one statute has been enacted at one time with a particular purpose in mind; and that another has been enacted at another time with a different purpose in mind. When this has been done and there is an apparent conflict, it is not proper to put all the emphasis to one statute, as though it stated all of the law on the subject to the exclusion of the other. They should be looked at together, in their rela-

tionship to each other, with a view to reconciling any such apparent conflict and giving each its intended effect insofar as that can be accomplished without nullifying the other.[1] It is therefore appropriate to consider the purpose of each statute and what would be the result of the alternative interpretations contended for by the parties.

It is plainly evident that Sec. 7–7–43, quoted above, was designed to apply to just such a situation as we have here. It is part of Chapter 20, Session Laws of Utah 1935, An Act Providing for the Protection of Creditors and Investors in Building and Loan Companies. When an institution such as Utah Savings finds it necessary to limit withdrawals, and its financial status is found to be questionable by the Bank Commissioner, it is obvious that the public would be aware of the risks involved and would not make further deposits unless they could be given some assurance that their money would not be lost. Inasmuch as deposits are the lifeblood of the bank, the bank would almost certainly have to close its doors, were it not for the expedient provided for in Sec. 7–7–43. The invocation of the authority given by that section to the Banking Commissioner and having further deposits treated as trust funds is calculated to encourage depositors to continue their patronage so the bank can remain in operation and be given a chance to work out of its difficulties.

Sec. 7–2–15, relied on by contestants, is an older enactment, coming from Ch. 23, S.L.U.1921, and is part of the chapter relating to Suspensions and Liquidations of banking institutions. If it were applied as they argue, so that deposits made after the order of the Banking Commissioner could not be treated as trust funds, the purpose and effectiveness of Sec. 7–7–43 as discussed above would be totally destroyed. On the other hand, the latter section can be given the effect and serve the salutary purpose discussed above without being inconsistent with or destroying what we think is the real purpose of Sec. 7–2–15 which is simply to insure that claimants are not given preference on the basis of personal favoritism or other improper considerations.[2] There can be no justifiable criticism of the Bank Commissioner's order in that regard. After he has determined the necessity for and makes the order, all subsequent deposits, whether by

1. University of Utah v. Richards, 20 Utah 457, 59 P. 96, states: "One act is not to be allowed to defeat another, if by reasonable construction the two can be made to stand together." To the same effect see also Western Beverage Co. of Provo, Utah v. Hansen et ux., 98 Utah 332, 96 P.2d 1105.

2. See United States Fidelity & Guaranty Co. v. Malia, etc., 87 Utah 426, 49 P.2d 954 (1935), in which this court, speaking of Secs. 7–2–15, 16, U.C.A.1953, stated: "The clear import of these sections is to fix equality in the treatment of claims and in the declaration of dividends thereon."

new depositors or by old depositors, are treated as trust funds and with "no preference or priority" to any deposits in the same classification.

 There is another point which supports the conclusion we have reached. It will be noted that the contestants, in attempting to place the entire emphasis on the language in Sec. 7–2–15 that "No preferences or priorities shall be given to any claim except such as are ordinarily incurred in supervising and liquidating the affairs of such institution," have ignored the clause which immediately follows that language. That clause is: *"and except such as are otherwise provided by law."* The latter clause is a clear indication of legislative awareness that there may be other priorities provided by law. It plainly applies to the instant situation, which is in fact "otherwise provided by law," that is, by Sec. 7–7–43.[3]

In regard to the claim of commingling of funds: Money is treated differently from what is normally called fungibles and the rule is that there is no commingling by the mixing of money when the amount owned by each claimant is known and kept track of.[4]

3. We also note that Sec. 7–7–43 was a later enactment than 7–2–15 as stated in the opinion and even if the statutes were in conflict, the later is usually given preference over the prior enactment. See

In accordance with what we have said above, it is our conclusion that the order of the Banking Commissioner that deposits made after July 7, 1966, be treated as trust funds should be given effect. It is so ordered. No costs awarded. (All emphasis added.)

CALLISTER, TUCKETT, HENRIOD and ELLETT, JJ., concur.

Nelden v. Clark, 20 Utah 382, 59 P. 524; Pacific Intermountain Express Co. v. State Tax Commission, 7 Utah 2d 15, 316 P.2d 549.

4. 1 Am.Jur.2d 289.