UNITED STATES of America,
Plaintiff-Appellee,

v.

Ronald SANTORA, Earl Rardin, Maurice Eugene Lickteig, Theresa Sohn, Garth Jon Brian Upton, Roy Cohn, Mary Evans, and Walter P. Moore, Defendants-Appellants.

Nos. 76–3440, 76–3446, 76–3485, 76–3521, 76–3525,76–3567, 76–3711 and 77–2626.

United States Court of Appeals,
Ninth Circuit.

July 18, 1979.

**1318**

Howard W. Gillingham, Los Angeles, Cal., Jerome M. Feit and Elliott Schulder, U. S. Dept. of Justice, T. George Gilinsky, Washington, D. C., on brief; Joe Reichman, Andrea Sheridan Ordin, U. S. Atty., Los Angeles, Cal., Jonathan M. Yost, Marina Del Rey, Cal., Peter Brown and Gordon J. Rose, Beverly Hills, Cal., and Kenneth L. Collins, Los Angeles, Cal., for defendants-appellants.

Robert L. Brosio, U. S. Atty., Ronald W. Rose (argued), Los Angeles, Cal., on brief; Michael E. White and James A. Twitty, Sp. Attys., Organized Crime & Racketeering Task Force, U. S. Dept. of Justice, Los Angeles, Cal., for plaintiff-appellee.

Before HUFSTEDLER and ANDERSON, Circuit Judges, and KING,* District Judge.

HUFSTEDLER, Circuit Judge:

The United States Supreme Court granted the Government's petition for a writ of certiorari in Santora's case, whose appeal we had consolidated with the appeals of Rardin, Lickteig, Sohn, Upton, Cohn, Evans, and Moore. The Supreme Court vacated our opinion and remanded the case to us for reconsideration in the light of *Dalia v. United States* (1979) —— U.S. ——, 99 S.Ct. 1682, 60 L.Ed.2d 177. We now issue a new opinion modifying our prior opinion in obedience to the Supreme Court's mandate.[1]

These consolidated appeals raise a series of issues relating to the validity, the interpretation and effect of four court orders authorizing FBI agents to wiretap several telephones and to permit FBI agents to break into a business premise for the purpose of installing, servicing, and removing an electronic listening device. With trivial exceptions, the Government's cases rested upon evidence that was the product of electronic surveillance conducted pursuant to court orders. Each of the appellants filed motions to suppress evidence gathered by electronic surveillance and the fruit of the intercepted conversations. These consolidated appeals present a number of issues common to all appellants, and others that relate to each individually.

The appeals arise from two separate indictments. One indictment charged 16 persons with various offenses involving traffic in stolen airline tickets. Santora, Evans, Lickteig, and Moore appeal from their convictions on various counts of the indictment charging stolen airline ticket offenses. The second indictment charged 11 persons with offenses involving traffic in controlled substances. Rardin, Cohn, Upton, and Sohn appeal from their convictions on various counts of the narcotics indictment.

## I. THE INTERCEPTION ORDERS

Four court interception orders are involved in this appeal. The first, interception Order No. 4651, was issued by the district court on April 1, 1975. It authorized FBI agents to conduct electronic surveillance, by means of a bug and two wiretaps, at the AAA Appliance Company, a small vacuum cleaner and sewing machine sales

---

* Honorable Samuel P. King, Chief Judge, United States District Court, District of Hawaii, sitting by designation.

1. Our prior opinion is reported at 583 F.2d 453.

and service business located in Inglewood, California. More specifically, the district court order authorized special agents of the FBI: "to enter the premises known as the office of Ronald Santora, at AAA Appliance Company . . . without permission of the owners, occupants, or lessees thereof and to install, maintain, and subsequently remove from said premises equipment for the interception of oral communications; and to intercept oral communications taking place within said office or within range of said equipment and to intercept wire communications to and from the above-described telephones . . . ." The two telephone taps authorized by this order were instituted on April 2, 1975. Federal agents broke into AAA at nighttime on April 3, 1975, and installed a bug within the premises.

Based on information obtained through both the bug and the wiretaps, the Government applied for another court order extending the period of permissible use of the devices. On May 12, 1975, the district court issued Order No. 4719, which extended the period of authorized surveillance for an additional 20 days. The extension order repeated the terms of the initial intercept order (including its entry provision) almost verbatim.

Two other interception orders were obtained by the Government. On April 21, 1975, the district court approved interception Order No. 4676, which authorized the tapping of a coin-operated public telephone located outside the premises of the AAA Appliance Company. The Government's application for this order cited incriminating conversations overheard by the wiretaps on the company's telephones, as well as visual observations of the suspected conspirators using the public phone outside the company. No information obtained through use of the bug was used to obtain the new interception order.

Interception Order No. 4700, issued on May 2, 1975, authorized wiretaps on five additional telephones. The Government's probable cause affidavit used to obtain this order included information obtained from the wiretaps on the company telephones, the bug in the company office, and the tap on the public phone. To support the claim that wiretapping was necessary, the Government relied primarily on prior statements made in the application for the initial interception order. However, none of the persons whose telephones were tapped pursuant to Order No. 4700 had been named in the initial interception application.

## II. THE ISSUES DECIDED

We consider three principal issues: (1) Was the initial intercept order valid? Adhering to our former opinion, we hold that it was. (2) Did Congress authorize federal agents to break into premises to plant bugging devices installed pursuant to court order? *Dalia v. United States, supra,* —— U.S. ——, 99 S.Ct. 1682, 60 L.Ed.2d 177, has answered that question affirmatively. (3) Was the prior showing of the inadequacy of investigative alternatives sufficient to support authority to tap telephones of persons who were not named in the initial intercept application? We adhere to our prior opinion, holding that it was not.

We first discuss the legal challenges to the electronic surveillance orders, and thereafter we undertake an examination of the contentions of the individual appellants which are not resolved by our disposition of the electronic surveillance orders.

## III. CHALLENGES TO THE INITIAL INTERCEPTION ORDER AS A WHOLE

■ The initial interception order (No. 4651), which permitted bugging of the appliance company and tapping of two company phones, is challenged in its entirety on three grounds. First, it is argued that the application for the order was defective because the Government did not produce evidence showing that the Attorney General personally reviewed the facts prior to signing the authorization. This contention need

not long detain us. We have heretofore rejected the contention that an Attorney General's authorization for a wiretap is defective in absence of a showing that the Attorney General reached his decision to authorize a wiretap only after evaluation of the factual foundation for the recommendation upon which he relies. (*United States v. Feldman* (9th Cir. 1976) 535 F.2d 1175; *United States v. Turner* (9th Cir. 1975) 528 F.2d 143.)

■ Second, appellants argue that the Government's initial application failed to make a particularized showing of the improbability of success or a high degree of danger from the use of alternative investigative techniques, as required by 18 U.S.C. § 2518(1)(c). This contention also fails. The Government presented the affidavit of Agent Blair, which contained a series of factual representations concerning the agents' efforts to use normal investigative procedures, all of which were unsuccessful. He also referred to the refusal of the informants to testify or to help agents infiltrate the conspiracy for fear of retaliation. The showings in Agent Blair's affidavit cannot be successfully distinguished ˙ from the showings held adequate in such cases as *United States v. Abascal* (9th Cir. 1977) 564 F.2d 821; *United States v. Feldman, supra,* 535 F.2d 1175. (*See also United States v. Turner, supra,* 528 F.2d at 152; *United States v. Kerrigan* (9th Cir. 1975) 514 F.2d 35, 38.)

■ Finally, appellants claim that the district court erred in denying an evidentiary hearing upon the minimization issue. The order specifically required minimization in conformity with 18 U.S.C. § 2518(5). In response to appellants' suppression motions premised on an alleged failure to follow minimization requirements, the Government filed an affidavit of Agent Blair, together with charts showing the number and kinds of conversations that had been intercepted pursuant to the court order. None of the appellants specifically sought an evidentiary hearing on the minimization question. The district court found that the agents had acted in good faith and in exercise of ordinary care and judgment in trying to minimize the interceptions. The appellants have failed to cite any authority requiring the district court, *sua sponte,* to order an evidentiary hearing when an issue is raised concerning minimization. We decline to supply any. Rather, the question whether an evidentiary hearing is appropriate rests on the reasoned discretion of the district court. The district court's failure to order an evidentiary hearing on its own motion is not an abuse of discretion in this case. The logs of the intercepted conversations, together with Agent Blair's affidavit, established a *prima facie* case that adequate minimization had been undertaken in a good faith, if not completely successful, effort to limit interception. As we stated in *United States v. Turner, supra,* 528 F.2d at 156:

"The statute does not require that all conversations ˙ unrelated to the criminal activity specified in the order be free from interception. Rather it requires that measures be adopted to reduce the extent of such interception to a practical minimum while allowing the legitimate aims of the Government to be pursued. [Citations omitted.] In a case where it is clear that the minimization provision of the order was disregarded by the Government throughout the period covered by the order, a total suppression might well be appropriate. We assume, *arguendo,* that such should be the rule. Here, however, the district court found reasonable and good-faith effort on the part of the Government to comply with the orders authorizing the interceptions."

(*Accord: United States v. Abascal, supra,* 564 F.2d 821; *United States v. Skully* (9th Cir. 1976) 546 F.2d 255; *United States v. Chavez* (9th Cir. 1976) 533 F.2d 491.)

The conclusion follows that the district court correctly denied the appellants' motions to suppress the telephone conversa-

tions together with the evidence thereafter developed from those conversations under authority of Order No. 4651.

## IV. VALIDITY OF THE BREAK–IN AND BUGGING

■ In our previous decision (*United States v. Santora* (9th Cir. 1978) 583 F.2d 453) we held that all evidentiary fruits of the break-in and bugging of the AAA Appliance Company must be suppressed because Title III does not empower courts to authorize break-ins. In light of the Supreme Court's contrary holding in *Dalia v. United States, supra,* we now must conclude that the break-in and bugging were valid.

## V. ADEQUACY OF THE GOVERNMENT'S SHOWING UNDER SECTION 2518(1)(c)

Congress sought to limit the use of electronic surveillance by law enforcement officers to circumstances in which normal investigative procedures are unlikely to succeed.. Section 2518(1)(c) of Title III, 18 U.S.C. § 2518(1)(c), requires applications for intercept orders to contain "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." Before approving an intercept order, a judge must determine "on the basis of facts submitted by the applicant" that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." (18 U.S.C. § 2518(3)(c).)

The initial application of the Government for authority to tap and bug the AAA Appliance Company contained a number of statements outlining the reasons why normal investigative procedures would be unlikely to succeed. The Government's affidavit related how two undercover agents who had entered the appliance company and pretended to be interested in purchasing a vacuum cleaner had been spotted as

law enforcement officers by Santora. The affidavit stated that the Government's two confidential informants refused to testify because they feared "the violent nature of Ronald Santora and Earl Lee Rardin." The arrest records of Santora and Rardin were presented in the affidavit to establish that they were "longtime participants in continuing criminal activity" who would not testify before a grand jury even if they were granted immunity from prosecution. One attempt to infiltrate the group was unsuccessful, the affidavit alleged, because Ronald Santora has "personally rejected" the undercover agent. Physical surveillance and search warrants would not crack the conspiracy, the affidavit also noted. The Government's affidavit was signed and sworn to by Jack D. Blair, a Special Agent of the FBI.

■ The statements of the affidavit, taken as a whole, presented a sufficient showing under Section 2518(1)(c) to support the initial Order No. 4651, that authorized tapping Santora's telephones at the AAA Appliance Company. For the purposes of the initial intercept order, the Government's affidavit was sufficiently specific to meet the standards we applied in *United States v. Kalustian* (9th Cir. 1975) 529 F.2d 585.

■ But this does not mean that once the Government has established the inadequacy of investigative alternatives relating to certain suspects, it may then dispense with the required showing when applying to tap the telephones of other conspirators. As we pointed out in *United States v. Abascal, supra,* 564 F.2d at 826: "It is not enough that the agents believe the telephone subscribers they wish to tap are all part of one conspiracy. Less intrusive investigative procedures may succeed with one putative participant while they may not succeed with another."

While the Government's first affidavit was sufficient to support the initial intercept order, it was not sufficient to establish that alternative investigative techniques

would not succeed with respect to other suspected conspirators whose telephones were later tapped. On May 2, 1975, intercept Order No. 4700, which permitted the tapping of five additional telephones, was issued. To support the claim that normal investigative techniques were inadequate, the Government relied almost entirely on its previous affidavit. A new affidavit by Special Agent Blair was filed and it "incorporated by reference" his prior statements in support of Order No. 4651. The only additional statements were as follows: "[T]he interception of wire communications over telephone numbers 213–753–5221 and 213–778–0033 revealed that Ronald Santora not only uses those telephones in carrying out the offenses described herein, but employs or associates with other individuals who also use the telephones described in this affidavit to make arrangements which further the illegal activities in which Ronald Santora and others are involved.

"Although Ronald Santora has made various arrangements with this conspiracy over telephone numbers 213–753–5221 and 213–778–0033, Santora is not solely responsible for the personal arranging for obtaining illegal contraband nor is he solely responsible for the personal arranging for selling illegal contraband. In order to fully identify the conspirators taking part in the violations alleged, it is necessary to monitor the conversations over telephone numbers requested in this affidavit.

"While special agents of the Federal Bureau of Investigation have been able to observe Ronald Santora meet with other conspirators in this alleged conspiracy, those observations alone have been insufficient in themselves to identify the nature of the conversations and transactions which have taken place."

 The affidavit in support of the order failed to recite that any specific efforts had been made by federal agents to investigate the activities of those persons whose telephones were to be tapped to discover each of those individuals' complicity in the offenses. Reference to the previous affidavit was insufficient to meet the requirements of Section 2518(1)(c) because the statements made in that affidavit focused on the difficulties in infiltrating the portion of the conspiracy that operated out of the AAA Appliance Company. No showing was made that normal investigative techniques would be unlikely to uncover the activities of the other alleged conspirators whose telephones were tapped under intercept Order No. 4700.

We hold that the Government failed to comply with Section 2518(1)(c) in its application for intercept Order No. 4700. Each of the appellants who participated in conversations intercepted under this order has standing to object. Thus, all evidence obtained by the five telephone taps authorized by Order No. 4700 must be suppressed as against participants in the intercepted conversations. The fruits of this illegal tapping, including the products of search warrants based on the intercepted conversations, must also be suppressed.

The convictions of Cohn, Sohn, and Upton must be reversed because the admissible evidence against them was plainly insufficient. Each of their convictions was based almost wholly on evidence obtained by the illegal taps. And each of these defendants has standing to object to the illegal interceptions. Cohn's conviction was based solely on four communications intercepted by wiretapping pursuant to invalid Order No. 4700. These conversations, which occurred on May 5 and May 7, 1975, at most raise some suspicion that Cohn was involved in narcotics traffic with Paul Harmon. Since Cohn's conversations must be suppressed, his conviction must be reversed for insufficient evidence. Because Cohn cannot be retried (*Greene v. Massey* (1978) 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15), we need not reach the question whether his right to a speedy trial was violated.

Sohn's conviction was based on her telephone conversations with Paul Harmon on

May 13, 18, 19, 20, 21, and 24, 1975. The telephone used by Harmon had been tapped by authority of intercept Order No. 4700. Because this order was invalid, all of Sohn's intercepted conversations must be suppressed. The other evidence against Sohn was the product of a search of her apartment on May 24, 1975. This search was authorized by a search warrant issued on the basis of facts supplied by the intercepted conversations. Because the warrant was the fruit of the illegal wiretapping, the search of Sohn's apartment was invalid, and the evidence obtained by the search must also be suppressed. Without the suppressed evidence, Sohn's conviction cannot stand.

Upton's conviction must also be reversed. Upton had incriminating conversations with Lee Henry Shook on May 16 and 18, 1975. These conversations were intercepted by a tap on Shook's phone that had been authorized by Order No. 4700. When these conversations are suppressed, the remaining evidence against Upton (a telephone conversation on May 16 to which Upton was not a party, and the inconclusive results of a search which may itself be tainted) is insufficient to support his conviction.

On the record before us we are unable to determine whether there is sufficient admissible evidence to support the convictions of the remaining defendants. Thus, we vacate the convictions of Santora, Evans, Rardin, Lickteig, and Moore, and remand their cases to the district court for further proceedings.

The record indicates that much of the Government's evidence against Santora was obtained by the legal wiretapping of Santora's phones. However, we cannot from the record before us separate the untainted from the tainted evidence. The district court did not have occasion to do so because it upheld the legality of all of the interceptions. Accordingly, we vacate Santora's conviction and remand the case to the district court. On remand, the parties may reopen the stipulation upon which the conviction was founded, including the stipulat-

ed dismissal of other counts charged against Santora. Santora may renew his suppression motion based on the principles announced in this decision. All evidence against Santora that is the fruit of intercept Order No. 4700 must be suppressed on remand.

Although much of the evidence against Evans was derived from an illegal tap on her telephone (pursuant to Order No. 4700), other evidence against her was obtained by the initial, legal wiretaps on the AAA Appliance Company phones. On remand, the stipulation between Evans and the Government may be reopened, and her motion to suppress may be renewed.

Some of the evidence against Lickteig was derived from a legal tap, while other evidence appears to be a product of the invalid Order No. 4700. On remand, Lickteig may renew his motion to suppress evidence obtained from the invalid taps, including the fruit of any searches obtained by warrants tainted by the illegal taps. Lickteig's challenges to the indictment and jury instructions are not well taken. The wording of the indictment was sufficient, and the court adequately covered conspiracy in its instructions to the jury.

The evidence against Moore was derived from telephone conversations between Moore and Evans, intercepted pursuant to the illegal tap on Evans' telephone. This evidence must be suppressed. On remand, the district court should determine whether the warrant authorizing the search of Moore's premises was based upon the same evidence. If so, the products of the search must also be suppressed.

While Rardin's conversations appear to have been intercepted legally, on remand the district court should determine whether the search of Rardin's residence was the product of any illegal interceptions that Rardin has standing to challenge.

The convictions of Cohn, Sohn, and Upton are reversed. The convictions of Santora, Evans, Rardin, Lickteig, and Moore are va-

cated and the causes are remanded to the district court for further proceedings consistent with the views herein expressed.