**STATE of Utah, Plaintiff and Respondent,**

v.

**Jacob J. LAMORIE, Defendant and Appellant.**

**No. 16534.**

Supreme Court of Utah.

March 28, 1980.

---

Paul W. Mortensen, Moab, for defendant and appellant.

Robert B. Hansen, Atty. Gen., Craig L. Barlow, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

HALL, Justice:

This case arises from an appeal to this Court by Jacob J. Lamorie (hereinafter defendant), from a conviction for possession of a dangerous weapon while on parole for a felony, in violation of Utah law.[1]

On the afternoon of October 14, 1978, Jesse Powell, a trooper with the Utah Highway Patrol, was driving westward on U.S. Highway 6 between Crescent Junction and Green River, Utah. Trooper Powell was off duty, and was taking a truckload of boy scouts back to Green River from a scout camp. Some ten miles east of Green River, Trooper Powell observed a van which had apparently been involved in an accident. Pulling over near the van, Trooper Powell directed the boy scouts to bring the first-aid

---

1.  U.C.A., 1953, 76–10–503(2).

kit from the truck, after which he approached the van to see if he could offer assistance. Trooper Powell observed the owner of the van, Dale Lowery, outside the vehicle, and the defendant seated inside. Trooper Powell approached the van, and, believing defendant to be injured, offered first-aid assistance. Defendant, however, refused such assistance, until Trooper Powell identified himself as an off-duty highway patrol officer, after which defendant left the van and received minor first aid.

Following this treatment, defendant again requested that Trooper Powell leave the scene, after which he went around to the other side of the van. Charles Durrant, one of the boy scouts who had brought the first-aid kit from Trooper Powell's truck, there observed the defendant pick up what appeared to be a sawed-off shotgun, broken into an open-breach position.

At some point during this incident, another car drove up and, upon learning what had happened, offered to take defendant in their car to receive medical assistance. Trooper Powell, however, believing that defendant might have been intoxicated, refused to let him leave the scene.

Following this conversation, Trooper Powell returned to the truck to talk to the boy scouts. Mr. Lowery joined him there. It was at this point that Trooper Powell observed that defendant had left the van, and was running in a crouched position behind a dirt embankment adjacent to the road. Defendant then slipped down into a wash beside the road, underneath an old wooden bridge. Mr. Lowery, believing defendant to be upset and likely to try to run from the scene, left Trooper Powell's truck and joined defendant in the wash. Trooper Powell made no move to pursue, until joined by Trooper David Bailey, who had been notified of the accident by another car which had stopped to offer assistance. Troopers Powell and Bailey then approached defendant and Mr. Lowery, both of whom emerged from the wash of their own accord. Defendant was carrying a

large metal scabbard made to contain a knife or sword. Trooper Bailey, concurring with Trooper Powell's opinion that Lowery and the defendant were intoxicated, placed the two men under arrest, the defendant for public intoxication and Mr. Lowery for driving under the influence of alcohol. The defendant, though somewhat abusive, did not offer any substantial resistance.

Following the departure of the two men in Trooper Bailey's vehicle, Trooper Powell and the boy scouts made a search of the wash. In the course thereof, they uncovered a sword which might have gone with the scabbard carried by defendant, and a sawed-off shotgun, which had now been broken down into two parts.

Upon learning that the defendant was allegedly under supervision by the Colorado Parole Board, the Grand County Attorney filed an information charging the defendant with possession of a dangerous weapon, specifically a sawed-off shotgun, while on parole from the state of Colorado, in violation of Utah law.[2]

At trial, the State produced Joseph L. Waters, who testified that he was a parole agent in the state of Colorado, and that the defendant had been under his supervision. The state then attempted to introduce, as part of Mr. Waters' testimony, two certified copies of defendant's parole agreement, together with certified copies of a "Judgment of Conviction—Sentence and Mittimus" and a "Mittimus to the State Reformatory of the State of Colorado." Defense counsel objected to the admission of the latter two documents, claiming that they were hearsay and that the state had not established an adequate foundation. The objections were overruled and the documents were received.

The jury returned a verdict finding defendant guilty as charged, whereupon the court sentenced him to serve one to fifteen years in the Utah State Prison, such being the penalty imposed for a second-degree felony.[3]

---

**2.** Id.

**3.** U.C.A., 1953, 76–3–203(2). U.C.A., 1953, 76–10–503(2) provides that "Any person who vio-

On appeal, defendant asserts, *inter alia*, that the admission in evidence of the copies of documents evidencing judgment of conviction of a felony and mittimus to the Colorado state reformatory was prejudicial error, entitling defendant to an acquittal by this Court. Defendant's argument may be summarized as follows. Under Utah law, the State is required, in pursuing a criminal prosecution, to prove every element of the crime charged beyond a reasonable doubt.[4] Should the State fail in this charge, a defendant is entitled to acquittal as a matter of law.[5] The essential elements of the crime charged in this case were (1) possession of a dangerous weapon, (2) while on parole, (3) for a felony. While the State offered a witness to show that defendant was under supervision of the parole board of Colorado, that witness did not have personal knowledge of defendant's prior conviction of a felony, and therefore could not testify to the same.[6] The witness, rather, attempted to establish the element of prior conviction of a felony by production of supposedly certified copies of Colorado court records. Such copies should not have been admitted into evidence as (1) they constituted hearsay evidence, not within any exception recognized by Utah law, and (2) they were not properly authenticated as required by the laws of this state. Since, in the absence of the documents erroneously admitted, the State would have failed to establish an essential element of the offense charged, defendant is entitled to an acquittal.

We are compelled to agree with so much of defendant's argument as relates to authentication of the documents challenged.

We observe, initially, that the challenged documents were essential to the State's case. This was so for two reasons.

First, the witness, Mr. Waters, had no personal knowledge of the defendant's conviction for a felony. Mr. Waters openly stated, on the stand, that he had not been present at the defendant's conviction, and did not mention any admissions made by the defendant, or other means of gaining personal knowledge of such conviction. Rather, asserted the witness, he had acted, in this case as in all cases, on the basis of copies of documents sent to him as parole agent from the sentencing court.

Second, the assertion that defendant had been convicted for a felony may not validly be inferred from the fact of parole supervision alone. It has been stated by this Court in the past that an element of an offense in a criminal prosecution may be established either directly, by the offering of actual evidence, or indirectly, by an inference drawn from such evidence, where that inference is the only reasonable conclusion to be drawn from the evidence offered.[7] In the present case, the fact that the defendant was on parole in the state of Colorado does not permit a certain inference that such parole was for a felony. The copies of defendant's parole agreement (to which no challenge is made) establish that parole was from the Colorado state reformatory. By examination of Colorado's statutory law,[8] we learn that the Colorado Parole Board is empowered to consider and grant parole for all inmates of the Colorado state reformatory.[9] The Colorado state reformatory, in turn, is a state correctional institution which contains both adults who have been convicted of felonies,[10] and individuals between the ages of 18 and 21 who have

---

lates this section is guilty of a felony of the third degree, and if the dangerous weapon is a firearm, explosive or infernal machine, he shall be guilty of a felony in the second degree."

**4.** U.C.A., 1953, 76–1–501(1).

**5.** Id.

**6.** Rule 19, U.R.E.

**7.** *State v. Hall*, 105 Utah 162, 145 P.2d 494 (1944); *State v. Housekeeper*, Utah, 588 P.2d 139 (1978).

**8.** We are entitled to make such an examination on our own impetus, by reason of the provisions of Rule 68(5), U.R.E.

**9.** Colo.Rev.Stat., 1973, 17–2–201(3)(c).

**10.** Colo.Rev.Stat., 1973, 16–11–301(1).

been convicted of misdemeanors.[11] From the fact of a parole agreement, without more, we are hence equally justified in inferring that defendant was a paroled felon and that he was a paroled misdemeanant. Should the latter be the case, an essential element of the charge is absent.

Given, then, that the challenged documents were essential to the State's case, we turn to a consideration of the propriety of their authentication as evidence.

■ By Utah law, any document, to be received in evidence, must be authenticated.[12] Absent such authentication, no competent evidence is before the court that the document is what it purports to be. Where the document in question is a copy of an official record, Utah law specifically addresses the mode of authentication. Rule 68(1), U.R.E., states that "An official record or an entry therein, when admissible for any purpose, may be evidenced by an official publication thereof or by a copy attested by the officer having the legal custody of the record, or by his deputy . . . ." In the present case, the State produced copies of Denver County court records, certified by a duly authorized notary public. Such notary, however, had no custody of the documents, official or unofficial. Neither was she a deputy of the court clerk, the official custodian of the documents. Nowhere in the certification of the copy presented in court does the clerk's signature appear. The State, then, seems to be relying on the certification of a notary public alone to authenticate the documents. Such procedure does not comply with that laid out by Rule 68(1).

It may be noted, moreover, that the State's attempted mode of authentication satisfies no other approved means of documentary authentication recognized by Utah law.[13] No Utah statute recognizes the certifying signature of a notary public, without more, as a proper means of authenticating an official document as evidence. Moreover, the common law of evidence has evolved in this particular area to require the same type of authentication as prescribed by Rule 68(1).[14]

■ We are not in agreement with the defendant, however, in his assertion that an acquittal is mandated by Utah law in the present case. Defendant relies on the statutory statement that "A defendant in a criminal proceeding is presumed to be innocent until each element of the offense charged against him is proved beyond a reasonable doubt. In absence of such proof, the defendant *shall be acquitted.*" (Emphasis added.)[15] This provision is simply a codification of the universal principle of American jurisprudence that an individual accused of a crime is entitled to a presumption of innocence, which the prosecution may overcome only by producing evidence which will satisfy the trier of fact beyond a reasonable doubt that the individual perpetrated each and every element of the crime alleged. It is implicit, however, that the prosecution have full opportunity to establish such proof. Where the prosecution possesses evidence conducive to that end, but due to an erroneous ruling of law, presents it in violation of an evidentiary rule of the court, justice requires that a further opportunity be provided. In short, the accused is entitled to demand that the prosecution prove him guilty, but not to fling each technical inadvertence occurring at trial in the path of such proof.

■ Defendant's reliance on the provision quoted, moreover, ignores other statutory provisions permitting the action taken here. Both the trial court[16] and this

---

11. Colo.Rev.Stat., 1973, 16–11–301(2).

12. Rule 67, U.R.E.

13. Rule 68(1), U.R.E., is specifically stated in the permissive, rather than the mandatory, sense. Rule 68(2) states that "This rule does not prevent the proof of official records or of entry or lack of entry therein by any method authorized by any applicable statute or by rules of evidence at common law."

14. Wigmore on Evidence, 1974, § 1677.

15. U.C.A., 1953, 76–1–501(1).

16. U.C.A., 1953, 77–38–3(5).

Court [17] are vested with the right to grant a new trial under the present circumstances. Such provisions are to be regarded as consistent with,[18] and a qualification of,[19] the more general provision, which applies only as indicated above.

■■ Defendant also asserts a right to acquittal at the hands of this Court, on the basis of his right under the Fifth Amendment, to the United States Constitution not to be placed in double jeopardy. He urges that such a result required by a recent ruling of the United States Supreme Court, holding that the double jeopardy clause of the Fifth Amendment precludes a second trial when conviction in the former trial is reversed for lack of sufficient evidence to sustain the jury's verdict.[20] Double jeopardy does not reach the circumstances of the present case. Reversal and remand for a new trial does not place the accused in double jeopardy where the error giving rise to the reversal is merely trial error, as distinguished from insufficiency of the evidence.[21] As stated by the United States Supreme Court,

> [R]eversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the

government has failed to prove its case. As such, it implies nothing with respect to the guilt or innocence of the defendant. Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect, e. g., *incorrect receipt or rejection of evidence,* incorrect instructions, or prosecutorial misconduct.[22] [Emphasis added.]

The state and the accused share the right to a fair, error-free determination of the guilt or innocence of the accused, and the double jeopardy clause may not deny either side that right.[23]

The conviction and judgment of the trial court is vacated and set aside and the case is remanded for a new trial in accordance with this decision.

CROCKETT, C. J., concurs.

STEWART, Justice (concurring):

I concur in the reversal of the judgment of conviction and also in the remand for a new trial. However, in view of the dissent with respect to the proper disposition of the case, I think it appropriate to state why I think that the case should be retried and not simply reversed.

17. U.C.A., 1953, 77–42–3.

18. *Greaves v. State,* Utah, 528 P.2d 805 (1974); *In re Utah Savings & Loan Ass'n,* 21 Utah 2d 169, 442 P.2d 929 (1968); *Glenn v. Ferrell,* 5 Utah 2d 439, 304 P.2d 380 (1956).

19. *Bateman v. Board of Examiners,* 7 Utah 2d 221, 322 P.2d 381 (1958); *Pacific Intermountain Express v. State Tax Commission,* 7 Utah 2d 15, 316 P.2d 549 (1957).

20. *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).

21. Id., at p. 14, 98 S.Ct. at p. 2148.

22. Id., at p. 15, 98 S.Ct. at 2149.

23. See 31 University of Chicago Law Review 365 (1963–64) for an able discussion as to the applicability of the principles of double jeopardy in instances as discussed herein. At page 371 thereof, the following pertinent statement appears:

> The distinction between reversal for error and reversal for insufficient evidence will not, of course, present itself as a perfect dichotomy in every case. The trial court

may have erroneously excluded prosecution evidence which would have been sufficient to support the conviction. Or the appellate court may find that after erroneously admitted evidence is struck from the record there is insufficient evidence remaining to support the conviction. In both cases the considerations which permit a new trial after reversal for error should control over the considerations which should prohibit a new trial after reversal for insufficient evidence. Where the trial court erroneously excluded the state's evidence, the prosecution was kept from proving its case only by the trial court's error. Permitting a new trial in that situation would have the added advantage of giving the appellate court some opportunity to rule on errors favorable to the government. Where the appellate court holds admission of evidence error, leaving insufficient evidence in the record to support the conviction, it would be difficult to determine what other evidence the prosecution might have presented had it not succeeded in getting in the evidence which the appellate court considers inadmissible.

*Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), and *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978), are pertinent to the proper disposition of this matter, but not dispositive. Those cases do not deal specifically with the question of what disposition should be made of a case upon a finding on appeal that certain evidence indispensable to proof of one element of an offense was erroneously admitted in the trial of the matter. In the absence of such evidence there is, of course, insufficient evidence to support the conviction. *Greene* specifically left the issue open of whether, excluding from consideration the erroneously admitted evidence, with the result that there would then be insufficient evidence to sustain a conviction, the matter could be retried. The Supreme Court in *Greene* remarked that the lower court's opinion could be construed as holding "that once the inadmissible hearsay evidence was discounted, there was insufficient evidence to permit the jury to convict," and the Court refused to express an "opinion as to the double jeopardy implications of a retrial following such a holding." 437 U.S. at 26, n.9, 98 S.Ct. at 2155 n.9.

Like all human endeavors, trials are rarely if ever conducted without at least some arguable error. It is, as has often been stated, a fair trial and not a perfect trial to which a defendant is entitled. A prosecutor is, of course, bound by the Code of Professional Responsibility, and I would not presume that a prosecutor would intentionally create error for the purpose of harassing a defendant with a second trial. He must also, like all trial lawyers, deal with practical considerations in the trial of a case and the administration of justice. It is important to recognize that prosecutors in the vast majority of cases act in good faith even though they may commit error, or more properly stated, induce a trial court to commit error. A workable system of criminal justice requires that we recognize these facts of life. True it is that a prosecutor should be an expert in trial procedure, but as every lawyer knows, in most lawsuits there are often difficult and arguable evidentiary questions which must be decided on the spot by the trial judge without the benefit of research.

In the case of "trial error"—by which I mean the erroneous introduction of evidence—justice is not promoted by simply reversing a conviction without remanding for a new trial because some critical evidence may have been erroneously introduced. Indeed in some cases it may be that the prosecutor holds some evidence back to avoid repetition. If the prosecutor does not have admissible evidence available for a retrial, the case will surely be dismissed. But if there is admissible evidence available, a proper balancing of the interest prohibiting double jeopardy and the interest of society in the enforcement of criminal sanctions requires that trial error not preclude a retrial.

The reasoning stated in *United States v. Mandel,* 591 F.2d 1347 (4th Cir. 1979), fully supports the conclusion that trial error should not prevent a retrial. The Court in *Mandel* stated:

> Our question is similar to the one left open in *Greene.* When the inadmissible evidence is removed from consideration, it is arguable there is insufficient evidence to support a conviction on at least some theories of the case. . . .

> The double jeopardy clause serves to protect a defendant against multiple prosecutions, but it must be remembered that society has a "countervailing interest in the vindication of criminal justice," and that both the state and the defendant have an interest in an error free determination of the merits of the case. *Green v. United States,* 355 U.S. 184, 219, [78 S.Ct. 221, 240, 2 L.Ed.2d 199] (1957) (Justice Frankfurter dissenting). These competing interests appear to be at the core of the distinction between the double jeopardy consequences of a reversal for trial error and insufficient evidence.

\*    \*    \*    \*    \*    \*

We are of opinion that ordinarily an appellate court should not be required to decide [the question of the sufficiency of

evidence if it has been presented in a case which would have to be reversed in all events for procedural error]. . . . Among other things, this rather invades the province of the jury and the trial court on retrial. The jury is the proper trier of the facts, including the credibility of witnesses and the inferences to be drawn from the testimony. Perhaps the faulty evidence was the key to the jury's decision; perhaps it was not. Who can say? Certainly not a court of appeals which has neither seen the witnesses nor heard them testify.

Another reason . . . is that it is impossible to say what other evidence the government might have produced had the faulty evidence not been admitted, and what theory of the case the government might have principally pursued had it been presented in the context of different evidence before the jury.

Thus, we believe it does a service neither to the defendants nor to the government to adjudicate the sufficiency of the balance of the evidence when important evidence has been ruled to be inadmissible. [591 F.2d at 1373–74.]

This approach is supported by dictum in *Burks* :

In short, reversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies nothing with respect to the guilt or innocence of the defendant. Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect, *e. g., incorrect receipt or rejection of evidence, incorrect instructions, or prosecutorial misconduct.* When this occurs, the accused has a strong interest in obtaining a fair readjudication of his guilt free from error, just as society maintains a valid concern for insuring that the guilty are punished. [437 U.S. at 15, 98 S.Ct. at 2149.] [Emphasis added.]

For these reasons, I concur in remanding for a new trial.

WILKINS, J., concurs in the views expressed in the concurring opinion of STEWART, J.

MAUGHAN, Justice (dissenting):

For the following reasons I dissent. The majority opinion is premised on the concept the prosecution should be given a second opportunity to establish an element of a crime, after it had previously failed, in the first proceeding, to introduce *admissible* evidence of such element. The majority opinion states:

". . . Where the prosecution possesses evidence conducive to that end [to establish proof], but due to an erroneous ruling of law, presents it in violation of an evidentiary rule of the court, justice requires that a further opportunity be provided. . . ."

This statement does not accord with the apparent facts. The majority opinion could be interpreted as stating the prosecution possessed an authenticated copy of defendant's prior felony conviction, and through an erroneous ruling of the trial court, presented only an unauthenticated copy of the judgment. Now, justice requires that a *"further opportunity"* be provided to the prosecution to present the evidence it possessed?

The record shows the prosecution failed to adhere to the requirements of Rule 63(17) and Rule 68, Utah Rules of Evidence; the result was the evidence introduced, and erroneously admitted by the trial court, was inadmissible hearsay. The admissible evidence is clearly not sufficient to establish an essential element of the crime charged. Consequently, defendant is entitled to an acquittal, because of insufficiency of the evidence. As held by the United States Supreme Court:

". . . the Double Jeopardy Clause precludes a second trial once the reviewing court has found the evidence legally insufficient, the only 'just' remedy availa-

ble for that court is the direction of a judgment of acquittal. . . .[1]

In *Burks* the court emphasized:

"The Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding. This is central to the objective of the prohibition against successive trials. The Clause does not allow 'the State . . . to make repeated attempts to convict an individual for an alleged offense,' since '[t]he constitutional prohibition against "double jeopardy" was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense.' [Citations].[2]"

*Burks* has been widely followed. *State v. Bannister*, Hawaii, 594 P.2d 133 (May 1, 1979) is particularly apt. There the testimony of the key witness was based upon another person's notation on an invoice. The invoice was not in evidence, and none of the hearsay exceptions applied. Consequently, the testimony was inadmissible.

Because the testimony of the key witness was the only testimony which would support the conviction, the State failed to prove, beyond a reasonable doubt, every element of the crime.

"Where the judgment is reversed for insufficiency of the evidence, as opposed to reversal for trial error, the Double Jeopardy Clause of the Fifth Amendment prevents a new trial. The appellant does not waive his right by moving for a new trial. *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).

"The public policy behind the double jeopardy rule is '. . . to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense.' Id. at 11, 98 S.Ct. at 2147, citing *Green v. United States*, 355 U.S. 184, 187, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957)."

Again, in *United States v. Santora et al.,* [600 F.2d 1317 (July 18, 1979)] the Court speaking through Hufstedler, C. J., cited a case companion to *Burks*, viz., *Greene v. Massey* (cited below), to reverse convictions based on insufficient evidence. The Court said, at page 1322:

"The convictions of Cohn, Sohn, and Upton must be reversed because the admissible evidence against them was plainly insufficient. Each of their convictions was based almost wholly on evidence obtained by the illegal taps. And each of these defendants has standing to object to the illegal interceptions. Cohn's conviction was based solely on four communications intercepted by wiretapping pursuant to invalid Order No. 4700. These conversations, which occurred on May 5 and May 7, 1975, at most raise some suspicion that Cohn was involved in narcotics traffic with Paul Harmon. Since Cohn's conversations must be suppressed, his conviction must be reversed for insufficient evidence. Because Cohn cannot be retried (*Greene v. Massey* (1978) 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15), we need not reach the question whether his right to a speedy trial was violated."

Minnesota and Tennessee have applied *Burks* and *Greene*. In *State v. Alexander*, Minn., 281 N.W.2d 349, 354 (May 18, 1979) the Court said:

"The district court found that the admission of certain hearsay evidence was prejudicial and that the state had thus failed to prove every element of its case. Because we believe that a retrial in this case may violate the double jeopardy clause of the Federal constitution, see, *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978); *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), we affirm the district court's reversal of the judgment of conviction on both counts."

And, in *Sloan v. State of Tennessee*, Tenn., 584 S.W.2d 461, 472 (Nov. 28, 1978, cert.

---

1. *Burks v. United States*, 437 U.S. 1, 18, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978).

2. 437 U.S. 11, 98 S.Ct. 2147.

denied, July 2, 1979 the Court reasoned, as follows:

"We find that the procedures used in the identification of defendant Charles Sloan were so suggestive that they gave rise to a very substantial likelihood of irreparable misidentification and that the in-court identification of him by Mrs. Evelyn Bullard should have therefore been excluded. Since there was no other evidence upon which defendant could have been convicted, we hold that his conviction is reversed.

"When a reversal is on the basis of insufficient evidence to support a verdict, the reviewing court must direct a judgment of acquittal, rather than order a new trial. Otherwise, the Double Jeopardy Clause of the United States Constitution would be violated. This was the holding of the United States Supreme Court in *Burks v. U. S.*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). In *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15, decided the same day, the court held that this principle applies to state criminal proceedings.

"Our reversal of defendant's conviction is clearly based on insufficient evidence to support a verdict, and we therefore remand this cause to the Williamson County Criminal Court for entry of a judgment of acquittal. Costs incurred on appeal are assessed against the State.

The precise effect of the majority opinion is to afford the prosecution another opportunity to supply, if it could, additional evidence [an authenticated copy of defendant's conviction of a felony in Colorado], which it failed to produce in the first proceeding. The Double Jeopardy Clause precludes a second trial under such circumstances.

The majority opinion classifies the circumstances of this case as one not falling within the ambit of the Double Jeopardy Clause, by characterizing the matter as merely an error in the proceedings. The

interpretation of the majority opinion is not in accord with the *Burks* opinion. The majority perceives *Burks* as ruling the Double Jeopardy Clause never applies if there be in the record an incorrect receipt or rejection of evidence. Such a literal interpretation appears based on a portion of one paragraph without consideration of the opinion in its entirety. The Court stated:

". . . In short, reversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies nothing with respect to the guilt or innocence of the defendant. Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect, e. g., incorrect receipt or rejection of evidence, incorrect instructions, or prosecutorial misconduct. When this occurs, the accused has a strong interest in obtaining a fair readjudication of his guilt free from error, just as society maintains a valid concern for insuring that the guilty are punished. . . .

"The same cannot be said when a defendant's conviction has been overturned due to a failure of proof at trial, in which case the prosecution cannot complain of prejudice, for it has been given one fair opportunity to offer whatever proof it could [supply].[3] Moreover, such an appellate reversal means that the government's case was so lacking that it should not have ever been submitted to the jury. Since we necessarily afford absolute finality to a jury's verdict of acquittal—no matter how erroneous its decision—it is difficult to conceive how society has any greater interest in retrying a defendant when, on review, it is decided as a matter of law that the jury could not properly have returned a verdict of guilty.[4]

---

**3.** In a footnote the Court stated that in holding the evidence insufficient to sustain guilt, an appellate court determines that the prosecution has failed to prove guilt beyond a reasonable doubt.

**4.** 437 U.S. 15–16, 98 S.Ct. 2149–2150.

The critical issue of *Burks* is *whether there has been a failure of proof at the trial and not the reason for such failure.* The question is one solely of law, has the prosecution sustained its burden of proof by presenting legally sufficient evidence to prove defendant's guilt beyond a reasonable doubt or was the government's case so lacking the matter should not have been submitted to the jury. If an appellate court be satisfied the evidence was sufficient to support the verdict it does not violate the Double Jeopardy Clause under such circumstances to remand the case for a fair, error-free trial.[5]

In the instant case, the prosecution had one fair opportunity to present proof establishing each element of the alleged crime; it failed to establish one element by legally admissible evidence. The Double Jeopardy Clause precludes affording the prosecution a second opportunity to muster the evidence it failed to supply in the first proceeding.

5.  *Greene v. Massey,* 437 U.S. 19, 25, 98 S.Ct. 2151, 2155, 57 L.Ed.2d 15 (1978).