STATE OF CONNECTICUT *v.* NEIL J. THOMPSON

STATE OF CONNECTICUT *v.* ROBERT E. PARKER, JR.

STATE OF CONNECTICUT *v.* JAMES C. BLACK

STATE OF CONNECTICUT *v.* FRANK P. LEPORE
(8359)
(8360)
(8362)
(8363)

SPEZIALE, C. J., PETERS, SHEA, GRILLO and COVELLO, Js.

Argued May 4—decision released September 6, 1983

*Francis M. McDonald,* state's attorney, with whom were *Bradford J. Ward,* assistant state's attorney, and, on the brief, *Austin J. McGuigan,* chief state's attorney, for the appellant in each case (state).

*Maxwell Heiman,* with whom were *Louis S. Avitabile, John D. Jessep, Robert M. Richards* and, on the brief, *William J. Tracy, Jr.,* for the appellee (defendant Parker).

*Louis S. Avitabile,* for the appellee (defendant Thompson).

PETERS, J. These appeals concern the extent to which the state police are required to minimize electronic

surveillance when conducting telephone wiretaps pursuant to General Statutes § 54-41a et seq. (wiretap statute), in the course of a narcotics investigation. In each case, the trial court dismissed informations charging the defendants Neil J. Thompson, Robert E. Parker, Jr., James C. Black, and Frank P. LePore with conspiracy to possess and distribute narcotics, after the defendants successfully moved, on the basis of inadequate minimization, to suppress evidence obtained from the wiretaps.[1] From the judgments of dismissal, the state has appealed.[2]

---

[1] The defendants and others were charged by a single information with conspiracy to distribute, sell, dispense, compound, and transport with intent to sell and dispense heroin, in violation of General Statutes §§ 53a-48 and 19-480a (now § 21a-278). The defendant Parker's motion to suppress the contents of intercepted wire communications was granted by the trial court, *McGrath, J.*, on September 6, 1974, after an extensive evidentiary hearing. The trial court based its suppression order entirely on the state's failure to minimize, and rejected the defendant's claims (a) that General Statutes § 54-41a et seq. violates the fourth amendment to the United States constitution and (b) that the police failed to make timely return of the tape recordings to the issuing panel, in violation of General Statutes § 54-41i. The state's motion to reargue the suppression motion was denied by the court, *Levine, J.*, on July 22, 1976. Thereafter the defendant moved to dismiss the information, arguing that the facts alleged in the affidavit supporting the bench warrant for his arrest were based on the suppressed evidence. The motion to dismiss was granted by the trial court, *O'Brien, J.*, on July 28, 1976.

Also on July 28, 1976, the trial court, *O'Brien, J.*, granted the motions of the defendants Thompson, Black and LePore to suppress evidence obtained in the same wiretaps, based on the suppression order in the Parker case. Accordingly, the informations in those cases were dismissed as well. The state thereafter obtained permission to file a single brief for all four appeals, having conceded that the prosecutions arose from the same factual situation. Of the defendants, only Parker and Thompson filed briefs; Thompson, Black and LePore indicated their willingness to rely on the Parker brief.

[2] The delay in the filing of the state's brief in these cases prompted this court to issue, sua sponte, a decree nisi on October 2, 1979, dismissing the state's appeal for failure to prosecute with proper diligence, to take effect unless the state filed its brief by November 15, 1979. The state complied

The trial court, *McGrath, J.,* in its memorandum of decision, found the following facts, now undisputed, concerning the wiretaps at issue in this case: On March 9, 1973, the state's attorneys for Litchfield county and New Haven county at Waterbury applied to a three judge panel for permission to intercept wire communications, pursuant to General Statutes § 54-41b.[3] The application sought authorization to tap two public pay telephones, one located in the lobby of the Austin House Hotel in Terryville and one located just outside the hotel, in order to overhear the conversations of Arnold Albert "and others unknown." The application contained an affidavit purporting to establish the necessity for the proposed wiretap.[4] This affidavit alleged:

with the decree, explaining the delay as the result of preparation of the transcript from the lengthy suppression hearing.

The case files disclose no attempt by the defendants to have the appeals dismissed due to the delay. After the state submitted its brief, the defendants obtained numerous extensions to file their own briefs. On December 2, 1980, this court, sua sponte, issued a nisi order, subsequently rescinded, directing judgment against the defendant LePore for failure to defend the appeal with proper diligence.

At oral argument, we voiced a concern that the time which has elapsed since the investigative phase of these matters might render unlikely a prosecution at this late date. The state offered assurance, however, that in the event the present appeals are resolved in its favor, the state intends to proceed in its prosecution of the defendants.

[3] "[General Statutes] Sec. 54-41b. APPLICATION FOR ORDER AUTHORIZING INTERCEPTION. The state's attorney for the judicial district in which the interception is to be conducted may make application to a panel of judges for an order authorizing the interception of any wire communication by investigative officers having responsibility for the investigation of offenses as to which the application is made when such interception may provide evidence of the commission of offenses involving gambling, bribery, violations of section 53-395, violations of section 21a-277 or felonious crimes of violence."

[4] "[General Statutes] Sec. 54-41c. INFORMATION IN APPLICATION. Each application for an order authorizing the interception of a wire communication shall be made in writing upon oath or affirmation to a panel of judges. Each application shall include the following information: . . . (2) the identity and qualifications of the investigative officers or agency for whom the authority to intercept a wire communication is sought; . . . (5) . . . (A)

that Albert and others, including Albert's partner Joseph LeBlond, were importing Mexican heroin into the state and selling it; that Albert and LeBlond were residing at the Austin House Hotel; that Albert used its two public telephones for narcotics transactions; and that the records of calls made from the lobby telephone indicated a continuous pattern of long distance calls to persons in Connecticut known to be heroin dealers and users. The application asked, therefore, for a ten day tap, for twenty-four hours each day, of both public telephones in order to discover the source of Albert's heroin and the extent of his heroin trafficking. The affidavit stated in an amendment, filed on March 14, 1973, that those officers who would conduct the wiretap had been trained in electronic surveillance by the Connecticut, New York or New Jersey state police departments.

The panel, on March 15, 1973, issued order 73-03 "to intercept the telephone communications of Arnold Albert residing/having his place of business at: Austin Hotel, Plymouth, Conn., from 5 p.m. on 15 March 1973 to 5 p.m. on 25 March 1973." The order contained the statutory requirement that the surveillance be "conducted in such a way as to minimize the interception of communications not otherwise subject to interception . . . ."[5]

details as to the particular offense that has been or is being committed, (B) a particular description of the nature and location of the facilities from which or the place where the communication is to be intercepted, (C) a particular description of the type of communications sought to be intercepted, (D) the identity of the person, if known, who has committed or is committing the offense and whose communications are to be intercepted."

[5] "[General Statutes] Sec. 54-41e. STATEMENT BY PANEL ON ISSUANCE OF ORDER. CONTENTS OF ORDER. Each order authorizing the interception of any wire communication shall be accompanied by a written statement of the issuing panel setting forth in detail its determination made in accordance with the provisions of section 54-41d and the grounds therefor and shall specify: (1) The identity of the person, if known, whose communications

In the order itself and in the documents accompanying the order,[6] only Albert was identified as the person whose conversations were to be intercepted. Although the order indicated generally that the state's application had been approved without condition, the order did not expressly authorize interception with respect to "others unknown," which the state's application had sought.

The wiretap operations pursuant to the authorized interception of the public telephones at the Austin House Hotel led to a request for a ten day extension of order 73-03. The wiretap panel authorized an extension on the same terms as the original order. Thereafter, on the basis of intercepted evidence that a telephone in Plainville was being used to conduct narcotics operations, the state applied for a second wiretap order. In this application, the state sought "to intercept the wire communications of Daniel A. Wrisley, a/k/a Daniel A. Risley and others unknown" over the telephone listed in his name, in light of evidence procured from the 73-03 wiretap, and elsewhere, which indicated that Wrisley's telephone was being used for narcotics transactions. The application again stated, as had the application for 73-03, that the monitoring

---

are to be intercepted; (2) the nature and location of the communication facilities as to which or the place where authority to intercept is granted; (3) a particular description of the type of communication sought to be intercepted, and a statement of the particular offense to which it relates; . . . (11) . . . . Every order and extension thereof shall contain a provision that the authorization to intercept shall be executed as soon as practicable, *shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception* in accordance with the provisions of this chapter, and shall terminate upon attainment of the authorized objective, or in any event within fifteen days next succeeding the date of issuance of such order." (Emphasis added.)

[6] In addition to the order itself, the panel is required to prepare a statement pursuant to General Statutes § 54-41e; see footnote 5, supra; and a report to be submitted to the chief court administrator. General Statutes § 54-41n.

officers for the proposed wiretap had been trained in electronic surveillance by the Connecticut, New York or New Jersey state police. The three judge panel approved the application and issued wiretap order 73-04 but again restricted its operation to Wrisley personally, furnishing express authority only "to intercept the telephone communications of (subscriber): Daniel A. Risley residing/having his place of business at: 17 Dewey Place, Plainville, Conn., from 6 p.m. on 28 March 1973 to 6 p.m. on 7 April 1973, inclusive, during 24 hours of each day." Surveillance pursuant to order 73-04 resulted in a successful application to the wiretap panel for a ten day extension of that order. In its extension application, the state relied in part on potentially incriminating conversations, to which Wrisley was not a party, of another person (defendant Parker) who was using the Wrisley telephone to conduct narcotics trafficking. The extension of order 73-04 modified only its date of expiration.

The trial court found that surveillance pursuant to the authorized wiretaps took the form of indiscriminate listening to all communications on the tapped telephones. Although the monitoring equipment could have been shut off or turned down upon a determination that an ongoing conversation was innocent, the police officers assigned to the wiretaps had received little or no instruction with respect to the statutory requirement of minimization. At most, some officers were instructed not to monitor privileged conversations in which one party was a clergyman, doctor or lawyer.[7] Conse-

---

[7] "[General Statutes] Sec. 54-41h. PRIVILEGED WIRE COMMUNICATIONS; ISSUANCE OF ORDER AND INTERCEPTION PROHIBITED. If the facilities from which, or the place where, the wire communications are to be intercepted are being used, or are about to be used, or are leased to, listed in the name of, or commonly used by, a licensed physician, an attorney-at-law or a practicing clergyman, no order shall be issued and no wire communications shall be intercepted over such facilities or in such places. No otherwise privi-

quently, with the exception of a single call involving a doctor, every call made over the tapped telephones, the public telephones under order 73-03 and the private telephone under order 73-04, was overheard and recorded in full. All calls were summarized in written logs maintained by the monitoring officers.

Although the state argued that narcotics investigations require unlimited interceptions because initially innocuous conversations may subsequently turn to narcotic related subjects and may use narcotic related code words, the trial court concluded that the surveilling agents had failed to comply with the minimization mandates of the wiretap orders themselves and of the statute. The court acknowledged that assessment of minimization depended "upon the facts and circumstances of each case." It recognized the practical difficulties of minimization but refused nonetheless to limit the responsibility to minimize to privileged communications. Because a communication once seized, no matter how wrongly, can never be given back, the court noted that "the right of privacy protected by the fourth amendment has been more invaded where a conversation which can never be returned has been seized than where a physical object which can be returned has been seized." On this basis, the trial court granted the defendants' motions to suppress the evidence obtained through the state's electronic surveillance. The informations against the defendants were thereafter dismissed.

The state raises three issues on appeal. First, it argues that, in determining that the monitoring officers failed to comply with the minimization requirement, the trial court applied an incorrect standard, focusing on

leged wire communications intercepted in accordance with, or in violation of, the provisions of this chapter shall lose their privileged character, nor shall any evidence derived therefrom be used for any purpose."

the subjective intent of the officers rather than on the objective reasonableness of their conduct under all the circumstances. Second, it argues that, under the circumstances of the present case, it was not objectively unreasonable for the officers to listen to all conversations during the conduct of the wiretaps. Third, it argues that, even if the wiretaps were conducted in violation of the minimization requirement, the proper remedy was the suppression only of those conversations which would not have been overheard had proper minimization been effected. We find no error.

I

The state's first claim of error addresses the standard by which compliance with the minimization required is to be measured. The state maintains that the trial court mistakenly relied on a subjective federal standard which the United States Supreme Court subsequently rejected in *Scott* v. *United States,* 436 U.S. 128, 98 S. Ct. 1717, 56 L. Ed. 2d 168, reh. denied, 438 U.S. 908, 98 S. Ct. 3127, 57 L. Ed. 2d 1150 (1978). Interpreting the minimization requirement of 18 U.S.C. § 2518 (5) (1976),[8] *Scott* held that the federal statute was not necessarily violated by failure to make good faith efforts to comply with the statute's requirement for minimization. Id., 135-36. Although the record in *Scott* showed that all conversations over the tapped telephones were recorded and only 40 percent were related to the stated subject of the investigation, the Supreme Court held that: "The statute does not forbid the interception of all nonrelevant conversations, but rather instructs the

---

[8] 18 U.S.C. § 2518 (5) provides in relevant part: "Every order [entered under this section] and extension thereof shall contain a provision that the authorization to intercept shall be executed as soon as practicable, shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter, and must terminate upon attainment of the authorized objective, or in any event in thirty days."

agents to conduct the surveillance in such a manner as to 'minimize' the interception of such conversations. Whether the agents have in fact conducted the wiretap in such a manner will depend on the facts and circumstances of each case." Id., 140.

The state argues that the trial court failed to follow the rule in *Scott* because it attributed dispositive weight to the police officers' indiscriminate listening to all intercepted communications over the tapped telephone lines. We note that the trial court also stated that resolution of the minimization question depended upon the facts and circumstances of each case. We are not persuaded that these divergent strands in the memorandum of decision necessarily signal that the trial court applied an incorrect standard.

The trial court was entitled to give some weight to the failure of the state's agents to attempt minimization. It is true that the case law after *Scott* counsels us that it may be difficult to screen intercepted conversations for pertinency, especially when the investigation focuses on a widespread conspiracy and when the investigation has not yet proceeded to establish patterns of conversations. *United States* v. *Napolitano*, 552 F. Sup. 465, 476 (S.D.N.Y. 1982); see *Scott* v. *United States*, supra, 140–42; *United States* v. *Feldman*, 606 F.2d 673, 678 (6th Cir. 1979), cert. denied sub nom. *United States* v. *Zalmonowski*, 445 U.S. 961, 100 S. Ct. 1648, 64 L. Ed. 2d 236 (1980); *United States* v. *Dorfman*, 542 F. Sup. 345, 390 (N.D. Ill.), aff'd, 690 F.2d 1217 (7th Cir. 1982); *United States* v. *Webster*, 473 F. Sup. 586, 597 (D. Md. 1979), aff'd in part, rev'd in part on other grounds, 639 F.2d 174 (4th Cir. 1981), aff'd and modified, 669 F.2d 185 (4th Cir. 1982), cert. denied, 456 U.S. 935, 102 S. Ct. 1991, 72 L. Ed. 2d 455 (1982); accord *United States* v. *Hyde*, 574 F.2d 856, 869–70 (5th Cir.), reh. and reh. en banc denied (5th Cir. 1978);

*United States* v. *Clerkley,* 556 F.2d 709, 716–18 (4th Cir. 1977), cert. denied sub nom. *Shade* v. *United States,* 436 U.S. 930, 98 S. Ct. 2830, 56 L. Ed. 2d 775 (1978); *United States* v. *Quintana,* 508 F.2d 867, 873–76 (7th Cir. 1975); see also Fishman, Wiretapping and Eavesdropping (1978) §§ 152–155; Fishman, "The 'Minimization' Requirement in Electronic Surveillance: Title III, The Fourth Amendment, and the Dread *Scott* Decision," 28 Am. U.L. Rev. 315, 338–43 (1979). Recent federal cases, however, permit inquiry into the good faith of the monitoring agents as a relevant although not a dispositive factor in minimization. *United States* v. *Santora,* 600 F.2d 1317, 1320 (9th Cir.), modified, 609 F.2d 433 (9th Cir. 1979); *United States* v. *Suquet,* 547 F. Sup. 1034, 1042 (N.D. Ill. 1982); contra *United States* v. *Feldman,* supra, 678 n.10; *United States* v. *Dorfman,* supra, 390 n.49. Total failure to attempt minimization is also implicitly discountenanced by those federal cases that insist that "[b]efore evidence seized under [18 U.S.C. § 2518 (5) (1976)] may be admitted, the court must be 'left with the conviction that on the whole the agents have shown a high regard for the right of privacy and have done all they reasonably could to avoid unnecessary intrusion.' *United States* v. *Tortorello,* 480 F.2d 764, 784 (2d Cir.), cert. denied, 414 U.S. 866, 94 S. Ct. 63, 38 L. Ed. 2d 86 (1973)." *United States* v. *DePalma,* 461 F. Sup. 800, 817 (S.D.N.Y. 1978) (decided after *Scott*); see *United States* v. *Clerkley,* supra, 716. Furthermore, we note that *Scott* itself in dictum states that the motive of the officers may be relevant in designing a remedy once the illegality of the wiretap is otherwise established. *Scott* v. *United States,* supra, 139 n.13. In our view, therefore, federal law does not preclude all inquiry into whether the conduct of police officers constituted indiscriminate listening.

Even more important, it is clear that the federal standard, while it establishes minimum guidelines for safeguarding individual freedom from unlawful electronic surveillance; see 18 U.S.C. § 2516 (2) (1976); in no way prevents states from enacting stricter safeguards; *State* v. *Grant,* 176 Conn. 17, 25, 404 A.2d 873 (1978); see *Warden* v. *Kahn,* 99 Cal. App. 3d 805, 810, 160 Cal. Rptr. 471 (1979); *State* v. *Ayres,* 118 N.H. 90, 91, 383 A.2d 87 (1978); *State* v. *Catania,* 85 N.J. 418, 436, 427 A.2d 537 (1981); *People* v. *Brenes,* 42 N.Y.2d 41, 46, 364 N.E.2d 1322, 396 N.Y.S.2d 629 (1977); "and courts may construe their own state's wiretap law so as to afford their citizens additional protection." *State* v. *Catania,* supra, 436; see *People* v. *Brenes,* supra, 46. The New York Court of Appeals, construing a statutory minimization requirement identical to that of our own state, has required the government to demonstrate "that procedures were established to minimize interception of nonpertinent communications and that a conscientious effort was made to follow such procedures." *People* v. *Floyd,* 41 N.Y.2d 245, 250, 360 N.E.2d 935, 392 N.Y.S.2d 257 (1976); see *United States* v. *Lilla,* 534 F. Sup. 1247, 1266–67 (N.D.N.Y. 1982); *People* v. *Brenes,* supra. The New Jersey Supreme Court, similarly, has held "that subjective good faith will be required in addition to actual objective reasonableness in all minimization efforts." *State* v. *Catania,* supra.

We have previously recognized that our own wiretap statute is in many ways more stringent than the federal act. *State* v. *Grant,* supra, 25, 25 n.3; see 14 S. Proc., Pt. 2, 1971 Sess., pp. 849 (remarks of Sen. Jay Jackson), 855 (remarks of Sen. James Macauley). While the federal minimization language is substantially identical to

Connecticut's,[9] the state minimization provision now requires that surveillance orders terminate within fifteen days. The more permissive federal act, on the other hand, allows thirty days of surveillance. The fifteen day limit is itself a form of extrinsic minimization[10] evidencing a strict approach on the part of our legislature with respect to the minimization question.

Resolution of the appropriate weight to be assigned good faith can await another day, however. The record in the present appeal does not require us to resolve the ambiguity inherent in the trial court's memorandum of decision.[11] Whatever standard the trial court adopted, or should have adopted, the present record demonstrates, for the reasons set out below, that the state police violated the minimization mandate of the wiretap statute and of orders 73-03 and 73-04.

---

[9] See footnote 5, supra, for relevant portion of General Statutes § 54-41e (11). See footnote 8, supra, for text of 18 U.S.C. § 2518 (5) (1976).

[10] "Extrinsic minimization involves limiting the time period during which monitoring is conducted." Fishman, Wiretapping and Eavesdropping (1978) § 151. "[T]here is some reason to think that restricting the time of listening in was thought by Congress to be the, or at least a, principal method of minimizing. See, e.g., Senate Report No. 1097, 90th Cong., 2d Sess., Judiciary Committee, Apr. 29, 1968, to accompany S. 917 reproduced in 1968 U.S. Code Cong. & Adm. News, p. 2112, at p. 2190, 2192–93." *United States* v. *Chavez,* 533 F.2d 491, 493 (9th Cir.), cert. denied, 426 U.S. 911, 96 S. Ct. 2237, 48 L. Ed. 2d 837 (1976).

[11] Because of the death of the trial court judge while this appeal was pending, we cannot remand for further articulation to ascertain the weight given to the monitoring officer's failure to attempt minimization. We note, however, that, in response to the state's motion to reargue, the trial court, *Levine, J.,* found no inconsistency between the memorandum of decision of *McGrath, J.,* and the District of Columbia Court of Appeals decision in *United States* v. *Scott,* 516 F.2d 751 (D.C. Cir.), reh. and reh. en banc denied, 522 F.2d 1333 (D.C. Cir. 1975), cert. denied, 425 U.S. 917, 96 S. Ct. 1519, 47 L. Ed. 2d 768 (1976). The Court of Appeals decision was approved by the United States Supreme Court in the principal case of *Scott* v. *United States,* 436 U.S. 128, 98 S. Ct. 1717, 56 L. Ed. 2d 168, reh. denied, 438 U.S. 908, 98 S. Ct. 3127, 57 L. Ed. 2d 1150 (1978).

## II

The state contends as a matter of fact that overhearing every telephone conversation in the present case was objectively reasonable because it was impossible to determine the pertinency of each call until the call terminated. The state supports this factual claim by alleging the high percentage of conversations pertinent to the complex narcotics conspiracy under investigation, and the brevity of the nonpertinent calls.

It is not the function of this court to make full-scale factual findings de novo. Thus our review of the state's allegations is limited to determining whether, during the suppression hearing, the state met its burden of making a prima facie showing of compliance with the minimization requirement.[12] If the state met its burden of demonstrating the impossibility of effecting further minimization, then the burden shifted to the defendant to demonstrate the state's failure to minimize. *United States* v. *Rizzo,* 491 F.2d 215, 217 (2d Cir.), cert. denied, 416 U.S. 990, 94 S. Ct. 2399, 40 L. Ed. 2d 769 (1974); *United States* v. *Suquet,* 547 F. Sup. 1034, 1045 (N.D. Ill. 1982); *United States* v. *Cale,* 508 F. Sup. 1038, 1041 (S.D.N.Y. 1981). We conclude that, even under the minimization standard it urges us to adopt, the state did not meet its burden.

It is true that many officers at the suppression hearing testified to the impossibility of ascertaining pertinency prior to the termination of calls, and to the absence of any "pattern of innocent calls" which might have established a basis for excluding from surveillance

---

[12] Since there are no issues of credibility in such a determination, it may appropriately be made by a reviewing court. See *Ivey, Barnum & O'Mara* v. *Indian Harbor Properties, Inc.,* 190 Conn. 528, 530 n.2, 461 A.2d 1369 (1983); *Drazen* v. *Drazen,* 180 Conn. 572, 573 n.3, 430 A.2d 1288 (1980).

calls falling within that pattern.[13] Furthermore, State Trooper John Petrowski, who supervised the surveillance, submitted to the trial court a pertinency analysis of overheard calls, based on his review of the logs prepared, contemporaneously with the surveillance, by the monitoring officers. That analysis alleged that of the 149 calls overheard on the Austin House Hotel lobby telephone during the first six days of wiretap order 73-03, 52 percent were pertinent to the investigation. Of the 68 nonpertinent calls, only eight exceeded two minutes in length. Of the 298 calls intercepted pursuant to order 73-04, 88 percent were pertinent. Of the 33 nonpertinent calls under order 73-04, only one exceeded two minutes in length. While the definition of pertinency was the subject of some disagreement among the officers who testified at the hearing, Trooper Petrowski deemed pertinent any narcotics-related conversation and any conversation to which a person under investigation was a party.

Our assessment of the state's case is hampered by the state's failure to offer a pertinency analysis of the great majority of calls made pursuant to order 73-03.[14] Without such an analysis, the trial court was not bound to credit the state's conclusory claim that only a small percentage of innocent calls exceeded two minutes in length.

The state's case is marred, however, by a deficiency more grave than this. The state contends that in determining, for minimization purposes, whether a call

---

[13] This same testimony did not claim that any attempt was made to minimize. Rather, the testimony was to the effect that, even if such an attempt had been made, no calls could have been excluded from surveillance.

[14] As we have noted, two public telephones were tapped at the Austin House Hotel pursuant to order 73-03. One was located in the lobby and one outside the hotel. The taps lasted twenty days each. The state's call analysis is restricted to calls overheard on the inside phone during the first six days of the tap.

should have been excluded from surveillance, the inquiry is whether the call was germane to the overall investigation. Such is not the case: "The term minimization is a shorthand expression which represents the government's obligation to reduce to the extent possible interceptions of conversations which are not the subject of *the court order.*" (Emphasis added.) *United States* v. *Dorfman,* 542 F. Sup. 345, 390 (N.D. Ill.), aff'd, 690 F.2d 1217 (7th Cir. 1982). Court orders 73-03 and 73-04 were for the interceptions of calls of Arnold Albert and Daniel Wrisley, respectively, not of the calls of their alleged coconspirators. Concededly, orders such as were issued in the present case permit the overhearing of unnamed individuals who are parties to the conversations of those named in the order. *United States* v. *Kahn,* 415 U.S. 143, 156, 94 S. Ct. 977, 39 L. Ed. 2d 225 (1974). Before an order can be said to permit surveillance of persons who are neither named in the order nor conversing with persons named in the order, however, the language "and conversations of others unknown," or some clear equivalent thereto, must appear on the face of the order.[15]

[15] The state contends that *United States* v. *Kahn,* 415 U.S. 143, 154–55, 94 S. Ct. 977, 39 L. Ed. 2d 225 (1974), holds "that the interception of conversations between persons unnamed in the order is proper so long as the conversations pertained to the subject matter within the purpose of the wire interception." We disagree with the state's interpretation. *United States* v. *Kahn* upheld the validity of an order permitting surveillance of a named subject "and others as yet unknown." Id., 156. In determining the permissible scope of the warrant, the Supreme Court found the quoted language dispositive; id.; and interpreted its meaning exactly as we do. Id.; accord *United States* v. *O'Neill,* 497 F.2d 1020, 1022–23 (6th Cir. 1974); compare *United States* v. *Capra,* 501 F.2d 267, 276 (2d Cir. 1974), cert. denied, 420 U.S. 990, 95 S. Ct. 1424, 43 L. Ed. 2d 670 (1975) (requiring suppression of conversations of party who was neither named in order nor conversing with named party, when order permitted only "the interception of telephonic communications of [named suspect] with co-conspirators, accomplices and agents"; id., 273) with *United States* v. *Principie,* 531 F.2d 1132, 1137–38 (2d Cir. 1976), cert. denied, 430 U.S. 905, 97 S. Ct. 1173, 51 L. Ed. 2d 581 (1977) (refusing to suppress conversations between two

Any other interpretation of the order's language would, we believe, vest the executing officer with discretion to determine the scope of the surveillance, in contravention of requirements contained in the fourth amendment to the United States constitution, in article first, § 7 of the constitution of Connecticut, and in the wiretap statute itself. "[T]he Fourth Amendment confines an officer executing a search warrant strictly within the bounds set by the warrant." *Bivens* v. *Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 394 n.7, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971); *Marron* v. *United States,* 275 U.S. 192, 196, 48 S. Ct. 74, 72 L. Ed. 231 (1927); *United States* v. *Heldt,* 668 F.2d 1238, 1260 (D.C. Cir. 1981), cert. denied sub nom. *United States* v. *Hubbard,* 456 U.S. 926, 102 S. Ct. 1971, 72 L. Ed. 2d 440 (1982). To permit the executing officer to exceed those bounds would eviscerate the fourth amendment's requirement that electronic surveillance be authorized by a warrant issued by a neutral judicial officer. *Katz* v. *United States,* 389 U.S. 347, 354-59, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967); *Berger* v. *New York,* 388 U.S. 41, 54-55, 87 S. Ct. 1873, 18 L. Ed. 2d 1040 (1967).

We emphasize that in construing the orders the issue is not whether the three judge panel could reasonably

unnamed parties when order permitted interception of "the telephonic communications of [named suspect], his co-conspirators, agents and associates"; id., 1135); see generally Fishman, Wiretapping and Eavesdropping (1978) §§ 49, 50 and esp. 110; contra *People* v. *Palozzi,* 44 App. Div. 2d 224, 227, 353 N.Y.S.2d 987 (1974). In *Palozzi,* the trial court suppressed conversations between two persons, neither of whom was the subject named in the warrant. *People* v. *Palozzi,* 74 Misc. 2d 774, 778, 346 N.Y.S.2d 595 (1973). The appellate division reversed on the ground that the express language of the warrant permitted "interception of the target phone to secure supervision of the persons involved in gambling activities"; *People* v. *Palozzi,* 44 App. Div. 2d 224, 226, 353 N.Y.S.2d 987 (1974); but also implied that, under *United States* v. *Kahn,* a narrower order would also have permitted interception of the conversations in question. Id., 226-27.

have issued broader ones. We assume arguendo that a broader order might well have issued for each wiretap. The scope of the wiretaps was for the panel to decide. In shaping its orders, the panel had discretion to narrow the permitted field of surveillance as it did. See General Statutes § 54-41d; cf. Mass. Gen. Laws Ann. c. 272 § 99 (I) (3) (1980).[16]

The state contends that the surrounding circumstances and certain language in the orders, however, indicate that the three judge panel approved the interception of all calls. This argument, which we find unpersuasive, consists of three parts.

First, noting that the wiretap applications sought to intercept the calls "of others unknown" in addition to Albert and Wrisley, the state argues that the panel's designation of the "approved" box on the order forms, instead of the "approved with conditions" box, had the effect of incorporating by reference the "and others unknown" language contained in the applications. We read the panel's designation as merely indicating that the state's application required no further amendment. We note that the panel had previously delayed action on the application pending the submission of an amendment by the state. Regardless of its actual meaning, however, the designation of the preprinted box is too ambiguous to contradict the clear language of the order itself.[17]

---

[16] The Massachusetts wiretap statute requires the order to specify the person to be overheard. It omits the "if known" language of the Connecticut statute. Mass. Gen. Laws Ann. c. 272 § 99 (I) (3) (1980); see Carr, The Law of Electronic Surveillance § 4.07 [1]. In Connecticut, the question of whether unnamed parties may be overheard is left to the issuing panel. Of course the greater latitude given the panel by the Connecticut statute in no way mandates the inclusion of "others unknown" in the scope of a particular order.

[17] The case cited by the state in support of its incorporation-by-reference argument is *United States* v. *Tortorello,* 480 F.2d 764, 781 (2d Cir.), cert.

Second, the state contends that the parenthetical designation of Wrisley as "subscriber" on application 73-04 indicates that it was his telephone, and not Wrisley himself, that was the subject of the wiretap order. We disagree. The word "subscriber" was pre-printed on the order form. In order 73-03, where it was inappropriate, it was simply crossed out. No particular significance, short of the fact that the subscriber of the telephone may typically be the subject of the proposed wiretap, should be attached to it. Nor can it be said, as a matter of law, that a warrant to overhear a sub-scriber's conversations constitutes a warrant to over-hear the conversations of all others who may use that telephone. As the wiretap statute explicitly recognizes, the privacy interest of one using a telephone is distinct from the privacy interest of the owner of the premises where the telephone is located. General Statutes §§ 54-41a (10), 54-41m; see also *Katz* v. *United States,* 389 U.S. 347, 351–52, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967). Of course, the fact that the wiretap was con-ducted on a residential telephone may remain relevant in determining the adequacy of minimization proce-dures. *Scott* v. *United States,* 436 U.S. 128, 140, 98 S. Ct. 1717, 56 L. Ed. 2d 168, reh. denied, 438 U.S. 908, 98 S. Ct. 3127, 57 L. Ed. 2d 1150 (1978).

Third, noting that the extension applications acknowl-edged conversations, already overheard, which

denied, 414 U.S. 866, 94 S. Ct. 63, 38 L. Ed. 2d 86 (1973). In that case the greater specificity of the incorporated application cured the dearth of specificity in the order itself. See also *United States* v. *Heldt,* 668 F.2d 1238, 1260 (D.C. Cir. 1981), cert. denied sub nom. *United States* v. *Hubbard,* 456 U.S. 926, 102 S. Ct. 1971, 72 L. Ed. 2d 440 (1982); *Hudson* v. *State,* 368 So. 2d 899, 903–904 (Fla. App. 1979). Because we find no incorporation by reference in the present case we express no opinion regarding the con-verse proposition advanced by the state: that a search which exceeds the particularized scope of the warrant may be justified based on the more gen-eral scope of the incorporated application. We note that this argument has been rejected by the District of Columbia Court of Appeals. *Moore* v. *United States,* 461 F.2d 1236, 1238–39 (D.C. Cir. 1972).

did not include the named parties, the state argues that the panel's granting of the extensions implicitly ratified the state's manner of executing the wiretaps. We again disagree. The extension application was not an adversary proceeding and the cited conversations were relevant only to determine the existence of probable cause. There is no reason to think that the panel, in issuing its ex parte order, even considered, let alone ratified, the manner in which the wiretaps were being conducted.[18]

The minimization issue in the present case may therefore be stated as follows: Was it possible for the state to minimize surveillance so as to exclude conversations not involving, for order 73-03, Arnold Albert, and, for order 73-04, David Wrisley? The state has made no claim that it was impossible to recognize, or to learn to recognize, the voices of these individuals. The testimony of the officers indicates, to the contrary, that it was entirely possible. For example, for order 73-03, during an eight hour shift on March 18, 1973, ten calls were fully intercepted, none of them involving Albert; on a March 20, 1973 shift, nineteen calls were intercepted, none involving Albert. In fact, for a period of several days inclusive of these shifts, close to 100 calls were monitored to which Albert was not a party. Our own examination of the logs of wiretap No. 73-04 indicates that the majority of the calls did not involve Wrisley as a party, and that the parties to most calls were readily identified by the monitoring officer.

---

[18] Even if we were to assume, arguendo, that the panel was cognizant of the unauthorized surveillance in which the police were engaged, it is doubtful that the panel would have had the authority retrospectively to enlarge the scope of the search authorized by its prior order. "A transaction capable of ratification can be ratified if, but only if, the purported principal can authorize such a transaction at the time of affirmance . . . ." 1 Restatement (Second), Agency § 86 (1957).

In light of these circumstances, we conclude that if the state had reasonably attempted minimization, a great number of conversations outside the scope of orders 73-03 and 73-04 could have been excluded from surveillance.[19] The wiretaps were therefore conducted in violation of the minimization requirement. *Scott* v. *United States,* supra, 134.

## III

The state's final argument is that, even if the conduct of the wiretap violated the minimization requirement, suppression is warranted only of those calls which should properly have been excluded from surveillance. The issue which the state raises was expressly reserved in *Scott* v. *United States,* supra, 135 n.10, and remains the subject of controversy in the courts.

One line of cases, which the state urges us to follow, holds that conversations contemplated by the warrant are admissible even if conversations extraneous to the warrant have been overheard. *United States* v. *Cox,* 462 F.2d 1293, 1301–1302 (8th Cir. 1972), cert. denied, 417 U.S. 918, 94 S. Ct. 2623, 41 L. Ed. 2d 223 (1974); *United States* v. *Dorfman,* 542 F. Sup. 345, 394–95 (N.D. Ill.), aff'd, 690 F.2d 1217 (7th Cir. 1982); *United States* v. *Sisca,* 361 F. Sup. 735, 746–47 (S.D.N.Y. 1973), aff'd, 503 F.2d 1337 (2d Cir.), cert. denied, 419 U.S. 1008, 95 S. Ct. 328, 42 L. Ed. 2d 283 (1974). Other courts require the total suppression of all communications wherever the minimization requirement is violated. *United States* v. *Focarile,* 340 F. Sup. 1033, 1047 (D. Md.), aff'd sub nom. *United States* v. *Giordano,* 469

---

[19] Because we agree with the trial court that the conduct of wiretap order 73-04 was in violation of the minimization requirement, it is unnecessary to consider the state's claim that the evidence showing probable cause for issuance of order 73-04 was obtained independently of the fruits of wiretap order 73-03. For discussion of such a claim, see *United States* v. *Giordano,* 416 U.S. 505, 530–33, 94 S. Ct. 1820, 40 L. Ed. 2d 341 (1974).

F.2d 522 (4th Cir. 1972), aff'd, 473 F.2d 906 (4th Cir. 1973), aff'd, 416 U.S. 505, 94 S. Ct. 1820, 40 L. Ed. 2d 341 (1974); *United States* v. *Scott,* 331 F. Sup. 233, 248 (D.D.C. 1971), vacated on other grounds, 504 F.2d 194 (D.C. Cir. 1974); see also N.J. Stat. Ann. 2A: § 156A-21 (Cum. Sup. 1983).[20]

We feel the more reasonable rule is that stated by a third line of cases. Numerous courts, both before and after the decision in *Scott* v. *United States,* have stated that while partial suppression is the proper remedy when minimization is attempted but fails, total suppression is necessary when the violation results from a complete disregard of the minimization requirement. *United States* v. *Santora,* 600 F.2d 1317, 1320 (9th Cir.), modified, 609 F.2d 433 (9th Cir. 1979); *United States* v. *Hyde,* 574 F.2d 856, 869 (5th Cir.), reh. and reh. en banc denied, (5th Cir. 1978); *United States* v. *Turner,* 528 F.2d 143, 156 (9th Cir.), cert. denied sub nom. *Grimes* v. *United States,* 423 U.S. 996, 96 S. Ct. 426, 46 L. Ed. 2d 371 (1975), and sub nom. *Hackett* v. *United States,* 429 U.S. 837, 97 S. Ct. 105, 50 L. Ed. 2d 103 (1976); *United States* v. *Suquet,* 547 F. Sup. 1034, 1039 (N.D. Ill. 1982); *United States* v. *Webster,* 473 F. Sup. 586, 598 (D. Md. 1979), aff'd in part, rev'd in part on other grounds, 639 F.2d 174 (4th Cir. 1981), aff'd and modified, 669 F.2d 185 (4th Cir.), cert. denied, 456 U.S. 935, 102 S. Ct. 1991, 72 L. Ed. 2d 455 (1982); *United States* v. *Curreri,* 363 F. Sup. 430, 437 (D. Md. 1973); *United States* v. *Lanza,* 349 F. Sup. 929, 932 (M.D. Fla. 1972); *United States* v. *Leta,* 332 F. Sup. 1357, 1360 n.4 (M.D. Pa. 1971); accord Fishman, Wiretapping and Eavesdropping § 290 (1978). Although the rule was

---

[20] The New Jersey wiretap statute provides that any minimization violation must result in the suppression of "the entire contents of all intercepted wire or oral communications . . . ." N.J. Stat. Ann. 2A: § 156A-21 (Cum. Sup. 1983); see *State* v. *Catania,* 85 N.J. 418, 426, 427 A.2d 537 (1981).

stated as dictum in the above-cited cases, the Florida Supreme Court and the New York Court of Appeals have required the total suppression of wiretap evidence in accordance with the rule which we adopt. *Rodriguez* v. *State,* 297 So. 2d 15, 21 (Fla. 1974); *People* v. *Brenes,* 42 N.Y.2d 41, 49–50, 364 N.E.2d 1322, 396 N.Y.S.2d 629 (1977). Three considerations, essentially, militate for this approach: (1) recognition of the need for an effective deterrent to unlawful conduct of wiretaps, (2) appreciation of the exceptional dangers inherent in overbroad wiretap surveillance, and (3) reluctance to accept as evidence in the courts of this state materials obtained in disregard of a court order.[21]

The difficulty with suppressing only those conversations outside the scope of the wiretap order is that a remedy so limited would remove an incentive to restrict interception to the proper scope of the order. *United States* v. *Focarile,* supra, 1047; *State* v. *Catania,* 85 N.J. 418, 426, 427 A.2d 537 (1981); Fishman, "The 'Minimization' Requirement in Electronic Surveillance: Title III, The Fourth Amendment, and the Dread *Scott* Decision," 28 Am. U.L. Rev. 315, 352 (1979); note, "Minimizing Minimization," 59 B.U.L. Rev. 567, 578 n.90 (1979). A court's exclusion of extraneous evidence

---

[21] A corollary of our holding today is that persons aggrieved by a particular wiretap; see General Statutes § 54-41a (10); have standing to contest the state's failure to minimize its interception of conversations, overheard in the course of the same wiretap, to which the aggrieved person was not a party. Accord *United States* v. *Scott,* 504 F.2d 194, 197 (D.C. Cir. 1974); *United States* v. *Suquet,* 547 F. Sup. 1034, 1038–40 (N.D. Ill. 1982); *State* v. *Catania,* 85 N.J. 418, 425–27, 427 A.2d 537 (1981). Determination of the overall reasonableness of minimization procedures necessitates such an approach. *United States* v. *Scott,* supra. In the present case, the state does not dispute that the defendants are aggrieved persons, nor does it make any other challenge to the defendants' standing. We express no opinion, therefore, as to whether an aggrieved person would have standing to suppress a conversation to which he was not a party, upon proof that the conversation was illegally intercepted. See *United States* v. *Scott,* supra, n.5; *United States* v. *Suquet,* supra.

constitutes a post facto minimization that neither remedies the prior invasion of privacy nor burdens those who conduct surveillance in disregard of the minimization requirement.

Furthermore, the purpose of the minimization requirement is to prevent a wiretap from turning into "a general search and wholesale invasion of privacy." *United States* v. *King,* 335 F. Sup. 523, 544–45 (S.D. Cal. 1971), aff'd in part, rev'd in part on other grounds, 478 F.2d 494 (9th Cir.), cert. denied sub nom. *Light* v. *United States,* 414 U.S. 846, 94 S. Ct. 111, 38 L. Ed. 2d 94 (1973), cert. denied, 417 U.S. 920, 94 S. Ct. 2628, 41 L. Ed. 2d 226 (1974); see *Andresen* v. *Maryland,* 427 U.S. 463, 482 n.11, 96 S. Ct. 2737, 49 L. Ed. 2d 627 (1976). The overhearing of telephone conversations, like a search of documents, poses an inherent danger of turning into a general search, due to the difficulty of ascertaining the relevance of the item to be "seized." *Andresen* v. *Maryland,* supra. Where disregard of a warrant's limitations is flagrant and entire, the otherwise valid warrant may become a general one in which case the "fruits of the search" must be suppressed. *United States* v. *Heldt,* 668 F.2d 1238, 1259 (D.C. Cir. 1981); see *United States* v. *Suquet,* 547 F. Sup. 1034, 1039–43 (N.D. Ill. 1982).

Finally, we feel the present approach is necessary to ensure the integrity of the wiretap statute and of the functioning of the judiciary with respect to it. The remedy which the trial court designed and which we adopt is no more exceptional than the circumstances which demanded it. The execution of the wiretap in the present case entirely misconstrued the scope of the order which authorized it, completely disregarded the minimization requirement contained in that warrant, and resulted in the overhearing of hundreds of conversations, incriminating and innocent alike, which could

have been excluded had proper minimization occurred. Because of the conjunction of these factors, the remedy of total suppression which the trial court ordered was entirely appropriate.

There is no error.

In this opinion the other judges concurred.